UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JERMEL JONES,

        Plaintiff,

v.                                                             Case No. 17-C-1523

RYAN MCCLAIN,

        Defendant.

## DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Jermel Jones, an inmate currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed this action under 42 U.S.C. § 1983, alleging violations of his civil rights while incarcerated at Racine Correctional Institution (RCI). Specifically, Jones alleges that Defendant Ryan McClain used excessive force against him by spraying him with an incapacitating agent despite knowing that Jones suffers from asthma. This matter comes before the court on cross motions for summary judgment by Jones (ECF No. 68) and McClain (ECF No. 71). For the reasons set forth below, McClain's motion for summary judgment will be granted, and Jones' motion will be denied.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on

those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. A court may properly enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## BACKGROUND

While housed in the Restrictive Housing Unit (RHU) at RCI on August 23, 2017, Jones pushed the emergency intercom button in his cell and said that he was feeling suicidal. Def.'s Proposed Findings of Fact (DPFOF) ¶ 3, ECF No. 74 (citing ECF No. 76-4 at 8, 13). Jones had threatened to kill himself on at least two other occasions in recent weeks. ECF No. 76-1 at 1, 3. In response, McClain came to Jones' cell from the unit control station, and when he arrived he found Jones with a towel around his neck. *Id*. ¶¶ 4–5 (citing ECF No. 76-4 at 18, 63–64). The parties dispute the size of the towel: Jones claims it was only a 5-inch wash cloth, while McClain notes that a video of a subsequent cell extraction clearly shows a much larger towel on the floor near the door of Jones' cell. *See id.* ¶ 7 (citing ECF No. 76-4 at 64–65; ECF No. 75-1 at 1:52–55). The parties also dispute the position of the towel at the time McClain arrived: Jones asserts that it was draped

2

across his shoulders behind his neck, while McClain states that it was tied around Jones' neck. *See id.* ¶ 8 (citing ECF No. 76-4 at 57–64).

McClain ordered Jones to remove the towel from around his neck, but Jones refused to do so. *Id.* ¶ 10 (citing ECF No. 76-4 at 66–67). Jones continued to refuse to remove the towel when McClain subsequently warned him that he would spray Jones with "OC spray," an incapacitating agent, if Jones persisted in his refusal. *Id.* ¶ 11 (citing ECF No. 76-4 at 67). Instead of removing the towel in response to these instructions, Jones hung a sheet from his cell door in a manner that covered its window. *Id.* ¶¶ 12–13 (citing ECF No. 76-4 at 19–23). At the time, Jones had with him in his cell not only personal property such as clothes and hygiene items, but also a blanket. *Id.* ¶¶ 14–15 (citing ECF No. 76-4 at 24, 31–32). In addition, the covered window prevented McClain from adequately monitoring Jones' well-being. *Id.*

Shortly after Jones covered his window, McClain inserted his can of OC spray into the cell through the trap door on the cell door and sprayed Jones in the face. Jones states that he heard a sound from the trap door and was immediately hit in the face with the spray when he bent over to investigate. *Id.* ¶ 16 (citing ECF No. 76-4 at 31–32). In light of Jones' recent threats to harm himself, McClain believed that using the non-lethal incapacitating agent was necessary and that any irritation it caused would be less than the serious harm or even death that Jones had threatened to cause himself. *Id.* ¶¶ 17, 19. After being sprayed with the incapacitating agent, Jones had an asthma attack. *Id.* ¶ 20 (citing ECF No. 76-4 at 44). McClain does not dispute that Jones has a contraindication to incapacitating agents. ECF No. 79 ¶¶ 6–7. Although McClain does not admit that he knew Jones has asthma, he does not dispute that he knew Jones was prescribed an inhaler and presumably had respiratory issues. *Id.*

3

McClain notified other staff members, supervisors, and medical staff that he had used the incapacitating agent, and soon after a group of correctional officers—other than McClain—extracted Jones from his cell. *Id.* ¶¶ 21–22. The officers helped Jones to rinse off in a shower, medical staff gave him his inhaler, and he was transported to the hospital to receive additional medical attention. *Id.* ¶ 23; *see also* ECF No. 75-1. Notes by a nurse at the hospital state that Jones told her he was trying to hurt himself with the towel but was no longer having thoughts of harming or killing himself once at the hospital. DPFOF ¶ 24 (citing ECF No. 76-2 at 1).

Following this incident, the Department of Corrections (DOC) conducted a use of force review to determine whether McClain appropriately employed the OC spray against Jones. *Id.* ¶ 28 (citing ECF No. 64-1 at 58). The review culminated in a report which evaluated whether McClain's actions were justified, whether they were desirable, and whether they were reasonable. *Id.* ¶ 29 (citing ECF No. 64-1 at 57). The report determined that McClain's use of the incapacitating agent was justified because he used it to counter the threat he perceived Jones posed to himself. *Id.* ¶ 30 (citing ECF No. 64-1 at 57). However, the report also concluded that use of the incapacitating agent was not desirable, because McClain placed himself at risk by putting his hand with the spray into the cell through the food trap, and that it was not reasonable in the face of alternative options, such as waiting for additional responders to arrive. *Id.* ¶¶ 32–35 (citing ECF No. 64-1 at 56–57).

## ANALYSIS

The court has permitted Jones to proceed on a claim that McClain violated the Eighth Amendment and subjected him to cruel and unusual punishment when he sprayed him with the incapacitating agent, causing the asthma attack. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he (1) was deprived of a right secured by the Constitution or laws

of the United States and (2) the deprivation was caused by a person or persons acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). "The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)).

When an inmate alleges that a prison official violated the Eighth Amendment by using excessive force against him, the inquiry is whether the prison official inflicted an injury "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). Thus, the infliction of even a relatively minor or de minimis injury can constitute a violation of the Eighth Amendment's prohibition on "cruel and unusual" punishment if it is done maliciously. *Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident.").

Considered in the light most favorable to Jones, the undisputed facts indicate that McClain used the OC spray to stop Jones from harming himself despite knowing that Jones suffered from asthma. As Jones emphasizes, a subsequent review of McClain's actions by the DOC found that, although his use of the OC spray was justified in these circumstances under Department of Adult Institutions use of force policies, use of the spray nonetheless was not reasonable. In the view of the reviewing committee, McClain could have waited for additional responders to arrive. This is not enough to create a factual issue under the Eighth Amendment. Indeed, the fact that the review found the use of the spray justified would at the very least entitled McClain to good faith immunity.

5

The Seventh Circuit has observed that "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Guitron v. Paul*, 675 F.3d 1044, 1045–46 (7th Cir. 2012) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Indeed, "[e]ven if 'it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable,' an error of judgment does not convert a prison security measure into a constitutional violation." *Id.* at 1046 (citation omitted) (quoting *Whitley*, 475 U.S. at 319). Compared to the death that Jones had undeniably threatened to inflict on himself, the possibility of exacerbating a respiratory condition as the price for saving his life does not appear cruel or inhumane, even in light of the DOC's subsequent determination that use of the incapacitating agent was not reasonable. The court therefore concludes that no reasonable jury could conclude that McClain's use of the incapacitating agent, despite his knowledge of Jones' asthma, was malicious.

Jones makes much of what he perceives to be lies in McClain's incident report to argue that McClain sprayed him with the incapacitating agent maliciously and without any basis in a real threat of harm to himself. McClain's contemporaneous incident report states that when he approached Jones' cell, Jones had "what appeared to be a ligature around his neck made out of a bed sheet." ECF No. 64-1 at 16. The report also states that the incident team "entered the cell . . . and removed the sheet from [Jones'] neck." *Id.* at 17. Yet the video of the extraction unquestionably shows that Jones did not have anything around his neck at the time the extraction team entered his cell (ECF No. 75-1 at 0:26–3:54), and Jones argues that the absence of anything around his neck at that time proves that he never had anything tied around his neck at all—which could in turn suggest that

6

McClain used the incapacitating agent solely for the purpose of maliciously exacerbating his asthma, rather than preventing him from harming himself. But McClain does not dispute that Jones did not have a ligature around his neck by the time that the extraction team entered the cell (ECF No. 79 ¶ 3), and he stated in response to one of Jones' discovery requests that he was outside the cell at the time of the extraction (ECF No. 76-3 at 8). Because McClain was not part of the extraction team, he could reasonably have inferred that the team removed the towel from Jones' neck, only to later learn based on additional evidence that it was gone before the extraction occurred. Consequently, any inconsistency in McClain's report is not sufficient to defeat his motion for summary judgment, and no reasonable jury could conclude that it masks a malicious intent to injure Jones.

Furthermore, even if disputes of material fact existed on Jones' excessive force claim, the court concludes that McClain would also be entitled to qualified immunity. *See Green v. Carlson*, 826 F.2d 647, 652 n.4 (7th Cir. 1987) (noting that qualified immunity may be available "even if the existence of disputed issues of fact precludes a grant of summary judgment on the merits"). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Specifically, officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A principle is "clearly established" if it has a "sufficiently clear foundation in then-existing precedent," meaning it is "settled law" as "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90

(first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741–42 (2011)).

This demanding standard extends qualified immunity to "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 208 (2015) (per curiam)). Critically, "[e]vidence concerning the defendant's subjective intent is simply irrelevant" when evaluating the availability of the qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). In fact, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized.").

Again considering the undisputed facts in the light most favorable to Jones, they show that McClain used an incapacitating agent only after Jones had threatened to kill himself, showed McClain a cloth wrapped around his neck, and covered the window of his cell to prevent McClain from observing Jones and ensuring his continued safety and welfare. Even assuming that McClain knew that Jones suffers from asthma, as the facts considered in the light most favorable to Jones would suggest, McClain used the incapacitating agent under circumstances where the alternative to exacerbating Jones asthma was Jones possibly killing himself—a far more serious harm than an asthma attack. Because Jones unquestionably claimed that he posed an imminent risk of harm to himself, the use of the incapacitating agent was thus an objectively reasonable response to protect Jones. Although the DOC's use of force report determined that the use of the incapacitating agent was not desirable or reasonable, the report also determined that McClain's action was *justified*, a determination undermining any argument that no objectively reasonable officer would ever use an incapacitating agent under these circumstances.

8

Indeed, the law arguably dictated that McClain either act to prevent Jones from harming himself or desist, and risk incurring civil liability for failing to protect Jones in the face of threats of self harm. *See Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006) ("Reckless indifference to the risk of a prisoner's committing suicide is a standard basis for a federal civil rights suit." (citing *Boncher ex rel. Boncher v. Brown Cty.*, 272 F.3d 484 (7th Cir. 2001))). Jones directs the court to no mandatory authority dictating that every reasonable correctional officer would know that using an incapacitating agent on an asthmatic inmate threatening to kill himself constitutes cruel and unusual punishment under the Eighth Amendment. It is for precisely this reason that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Al–Kidd*, 563 U.S. at 743. Consequently, even if disputes of material fact did exist regarding Jones' claim that McClain used unconstitutional excessive force by deploying the incapacitating agent, McClain would be entitled to qualified immunity because he responded to Jones' threat of suicide in an objectively reasonable manner.

## CONCLUSION

For the foregoing reasons, McClain's motion for summary judgment (ECF No. 71) is **GRANTED** and Jones' motion for summary judgment (ECF No. 68) is **DENIED**. The Clerk is directed to enter judgment in favor of McClain.

Dated this __23rd__ day of August, 2018.

                                               s/ William C. Griesbach
                                               William C. Griesbach, Chief Judge
                                               United States District Court